UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TODD JENKS,<br><br>Plaintiff,<br><br>v.<br><br>DLA PIPER (US) LLP,<br><br>Defendant. | Case No. 13-cv-05381-VC<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED PETITION TO CONFIRM, VACATE AND/OR MODIFY ARBITRATION AWARD**<br><br>Re: Dkt. No. 35 |

## I. INTRODUCTION

Petitioner M. Todd Jenks worked as an associate attorney at DLA Piper LLP. DLA Piper terminated him, and he sued in state court. The court ordered arbitration, and the arbitrator awarded Jenks $93,635.67, concluding DLA Piper had shortchanged him on short-term disability benefits. Jenks now seeks to confirm the parts of the award favorable to him and vacate the parts with which he disagrees.

A federal court has jurisdiction to entertain a petition to vacate an arbitration award if the petition includes colorable allegations that the arbitrator manifestly disregarded federal law. Under the "manifest disregard" standard, the arbitrator must do more than make mistakes; she must actually recognize well-established federal law and then choose to ignore it.

Jenks alleges the arbitrator manifestly disregarded the Employee Retirement Income Security Act of 1974 ("ERISA"). But the petition does not include allegations that would, if true, establish that she in fact recognized and then chose to ignore clearly-established ERISA law. Although the petition alleges Jenks submitted clearly-established ERISA authority to the arbitrator, this is not enough to state a claim that she "recognized" the authority and then ignored

it. If an arbitrator could be deemed to have actually recognized federal law merely because a litigant presented it to her, the losing party could obtain federal judicial review virtually any time an arbitrator made a mistake on a federal law question. Jenks' jurisdictional argument would utterly do away with the distinction between mere error and manifest disregard of federal law. Accordingly, his "manifest disregard" allegation is "patently without merit." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 n.5 (9th Cir. 2004), which means there is no subject matter jurisdiction. Nor could Jenks amend his petition to properly allege federal jurisdiction, because the documents from the arbitration record incorporated by the petition indicate that although the arbitrator may have made mistakes in considering Jenks' ERISA claims (mistakes that were probably invited by the manner in which he presented the claims to her), she did not go so far as to actually recognize well-established ERISA law and then ignore it.

Even if the Court had jurisdiction, it would decline to exercise it under the *Colorado River* abstention doctrine. Jenks originally sued DLA Piper in state court, asserting only state law claims. The state court compelled arbitration, but retained jurisdiction over the matter to entertain any future petition to confirm or vacate the arbitration award, as contemplated by California law. During the arbitration, Jenks added or attempted to add various ERISA-based claims, but the case remained primarily a state-law dispute. And after the arbitration, DLA Piper filed a petition in the state court case to confirm the award, again as contemplated by California law. The state court granted the petition because: (i) Jenks failed to submit a timely response; and in any event (ii) his response lacked merit. Under these circumstances, review of the arbitration award by a federal court would not be appropriate.

The amended petition is dismissed with prejudice.

**II.   BACKGROUND**

This description of the proceedings is derived entirely from Jenks' petition, the records from the state court proceedings, and the records from the arbitration that Jenks submitted with the petition, which both sides have agreed the Court may consider at the pleading stage.

**A.   The Original Lawsuit**

This case arises from a dispute between Jenks and DLA Piper concerning termination of

Jenks' employment as an associate attorney. In the wake of that termination, Jenks sued DLA Piper in San Francisco Superior Court, asserting numerous state law claims and no federal claims. DLA Piper filed a motion to compel arbitration, which the Superior Court granted. The Superior Court retained jurisdiction pending the arbitration, as contemplated by California Code of Civil Procedure Section 1292.6, which provides that the court "retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any subsequent petition shall be filed in the same proceeding."

### B.     Proceedings Leading Up To The Arbitration Hearing

During the arbitration, Jenks filed a first amended complaint with the arbitrator, which added two ERISA-based claims relating to a long-term disability plan. The first ERISA claim (which was the sixth cause of action in the first amended complaint filed with the arbitrator) was for failure to provide documents relating to the long-term disability plan. The second ERISA claim (which was the seventh cause of action) was for a declaration of Jenks' rights under the long-term disability plan. The long-term disability plan to which Jenks referred in these two causes of action was a plan administered by Standard Insurance Company.

The first amended complaint included another cause of action based on the Standard long-term disability plan (which was the eighth cause of action). However, Jenks went out of his way in the first amended complaint to say he was not bringing this claim under ERISA. He alleged:

> DLA Piper's activities in connection with the Standard LTD policy, from and after the consummation of the Termination Agreement, were insufficient as a matter of law to constitute an ongoing administrative scheme requisite to the existence of an employee benefit plan subject to ERISA. *Mr. Jenks' claims with respect to the Standard LTD policy are therefore not subject to ERISA*, but rather are governed by the law of the State of California, including without limitation California's legal principles pertaining to insurance bad faith and the remedies available therefor.

Docket Nos. 10-9 and 10-10, First Amended Complaint (filed in arbitration) at ¶ 77 (emphasis added).

#### i.     The motion to dismiss

DLA Piper filed a motion to dismiss various claims, including the seventh and eighth causes of action described above (but not the sixth cause of action for failure to provide plan

3

1   documents). DLA Piper argued the seventh cause of action should be dismissed for failure to
2   exhaust administrative remedies. The arbitrator ruled in favor of DLA Piper on the seventh cause
3   of action, but not based on DLA Piper's exhaustion argument. Instead, the arbitrator ruled that the
4   seventh cause of action was preempted by ERISA. *See* Docket No. 10-18, Decision of Arbitrator
5   on Respondents' Motion to Dismiss. This was incorrect, because that cause of action was in fact
6   based on ERISA.[1] In response to a motion for reconsideration filed by Jenks, the arbitrator issued
7   a decision explaining that her finding that the seventh cause of action was ERISA-preempted
8   meant "by implication" that she "accepted the proposition that exhaustion of administrative
9   remedies was required in the case of the [long-term disability] plan and that [Jenks] had neither
10  plead [*sic*.] nor established that administrative remedies had been exhausted." Docket No. 15-6,
11  Decision of Arbitrator on Requests to Modify Decision on Motion to Dismiss.
12      With respect to the eighth cause of action (which Jenks had styled as a state law claim even
13  though it was based on the Standard long-term disability plan), DLA Piper argued that this claim
14  was preempted by ERISA, and the arbitrator agreed.

### ii. The "request for addendum"

16  Several months later, Jenks submitted a "request for addendum" to the arbitrator, seeking
17  to add two more claims to his first amended complaint. Jenks proposed a ninth cause of action for
18  "make-whole relief and imposition of equitable surcharge" under ERISA relating to a different
19  long-term disability policy – a policy he called "the 2005 UNUM disability policy." And Jenks
20  proposed a tenth cause of action under the same ERISA theory based on alleged violations by
21  DLA Piper relating to a short-term disability plan. *See* Docket No. 10-19, Addendum to First
22  Amended Complaint.
23      The arbitrator denied Jenks' request. With respect to the proposed tenth cause of action
24  based on the short-term disability plan, the arbitrator denied the request "based on the operative

---

[1] The arbitrator's mistake might have been invited by the above-quoted language from Paragraph 77 of Jenks' first amended complaint, which pronounced in the eighth cause of action that his claims related to the long-term disability plan were based on state law, even though in the previous breath he had styled the sixth and seventh causes of action, which related to the same long-term disability plan, as ERISA claims.

4

rulings in this case to date with regard to the [short-term disability plan]." Docket No. 10-19, Decision of Arbitrator on Claimant's Request for Addendum. This was in reference to the arbitrator's prior ruling that the short-term disability plan was not an ERISA plan (which meant that it could not give rise to an ERISA cause of action). Jenks does not contend in these proceedings (nor did he appear to contend during the arbitration) that the short-term disability plan was in fact an ERISA plan.

With respect to the proposed ninth cause of action (based on the 2005 UNUM long-term disability plan), the arbitrator denied the request as well, but "for a different reason." She ruled:

> It is true that UNUM has been mentioned in this case before and that there is even a specific allegation that DLA Piper "withheld from UNUM and Standard pertinent information in its possession which was necessary for Mr. Jenks' securing the benefits of those companies' respective policies." However, it is critically important to note that even that one allegation is clearly tied, in its own final words, to DLA's alleged "breach of the Termination Agreement." The Ninth Cause of Action Addendum seeks to add entirely new claims arising out of DLA's alleged capacity as designated plan administrator under the UNUM policy and newly alleged untruths and inducements related to the UNUM policy. These claims are outside of the "course of conduct" previously described in great detail in Claimant's pleading. Allowing them would in fact be very likely to cause prejudicial delay, including added costs and an increased burden of discovery. DLA Piper has never until quite recently been on notice that these new claims and new factual allegations might arise and could not be expected to have pursued its discovery or its defense with them in mind.

*Id*.

### iii. The motion in limine

Still later in the proceedings, and just before the actual arbitration hearing, DLA Piper filed a "motion in limine" to dismiss the sixth cause of action – the ERISA claim for failure to provide documents relating to the Standard long-term disability plan. DLA Piper argued that Jenks had not brought this action within the limitations period governing ERISA claims, and the arbitrator agreed:

> The claim is barred by the applicable statute of limitations and is hereby dismissed on that basis. This decision does not however preclude Claimant from offering argument and evidence at the hearing regarding Respondent's alleged failure to provide, or to timely provide, documents, insofar as such evidence is offered in support of any or all of the remaining causes of action against Respondent.

5

Docket No. 11-3, Decision of Arbitrator on Pre-Hearing Motions.

### C. The Arbitration Award

Accordingly, by the time of the hearing and post-hearing decision, the arbitrator had already dismissed, or denied requests to add, all of Jenks' ERISA-related claims. To recap, she dismissed the sixth cause of action (for failure to provide plan documents) on statute of limitations grounds. She dismissed the seventh cause of action (for a declaration of rights under the Standard long-term disability plan), ultimately basing her decision on the failure to allege exhaustion of administrative remedies. She dismissed the eighth cause of action (a state law claim for breach of duty of good faith and fair dealing relating to the Standard long-term disability plan) on the ground that it was preempted by ERISA. She refused to allow Jenks to add the ninth cause of action (an ERISA claim for "make whole relief" and "equitable surcharge" based on the 2005 UNUM long-term disability plan) on the ground the claim was untimely, would submit DLA Piper to additional discovery, and would unfairly delay the proceedings. And the arbitrator refused to allow Jenks to add the tenth cause of action (an ERISA claim for "make whole relief" and "equitable surcharge" based on the short-term disability policy), because she had previously ruled that this policy was not governed by ERISA.

In her final decision, the arbitrator awarded Jenks $93,635.67 based on his state law claims, on the theory that DLA Piper had shortchanged him on his short-term disability benefits, albeit not in bad faith. *See* Docket No. 1-1, Award of Arbitrator at 9. In addition, even though she had already ruled with respect to all existing and proposed ERISA-related causes of action, the arbitrator discussed ERISA in her final decision, noting she had given Jenks "general flexibility to conform his claims to proof." *Id.* at ¶ 7(a). She reiterated that the sixth cause of action for plan documents was time-barred. She then entertained arguments made by Jenks (but apparently never included in his first amended complaint or offered as an addition to the first amended complaint) that DLA Piper breached a fiduciary duty relating to the 2005 UNUM long-term disability plan. She rejected the fiduciary duty arguments relating to the UNUM plan, concluding as follows:

> ERISA is the legal basis for the fiduciary duty here. Unlike in the case of the STD Plan discussed above, the duty does in fact exist with regard to the LTD Plan. Nevertheless, any "loss" that Claimant

6

> had as a result of breach of that fiduciary duty, if any such breach occurred, has already been fully compensated for as a result of my award in connection with the contract claims.  The only loss suffered by Claimant as a result of the matters at issue in this action was an increase in emotional distress.  An award of duplicative damages under different legal theories would be inappropriate and unfair.  Thus, the question of whether or not there were specific breaches of the duty in question, in the absence of evidence of intentional behavior as is the case here, is totally moot.  However, I will note that it is not at all clear from the evidence or the cited authorities that the employee behavior in question rose to the required level of bad faith necessary to support a finding that breaches of fiduciary duty occurred under ERISA.  Therefore, any declaratory or injunctive relief, or other equitable or legal remedies, requested in connection with this claim are also denied.

*Id.* at ¶ 7(b).

Finally, the arbitrator entertained arguments made by Jenks (but also apparently never included in his first amended complaint or offered as an addition to the first amended complaint) that the arbitrator should remove ERISA fiduciaries.  She ruled:

> This request for relief is also included under the umbrella of claims based on the LTD Plan and assumes that a groundwork establishing a breach of fiduciary duty under ERISA has been laid.  It has not.  I find it necessary to note here that I made very clear from the beginning of this case that we would not be dealing with ERISA claims or consequently with the LTD Plan unless evidence related to such matters had bearing on other claims before me.  I dismissed several causes of action on that basis in response to a Motion to Dismiss.  Moreover, since I did permit Claimant the opportunity to conform to proof, I will add as a point of clarity that the evidence presented did not alter my viewpoint with regard to that earlier ruling and does not in my view adequately support a decision in Claimant's favor with regard to this sort of extreme relief.  Moreover, to the extent that Claimant may be seeking this remedy on behalf of others who are not parties to this arbitration, the matter is not arbitrable in this proceeding.  As with regard to the STD Plan, this does not mean that it might not be a proper issue for a different arbitration or that it might not be an issue that could be raised in a court of law by proper parties.  This Award is made without prejudice to either of those possible actions.  I make no ruling with regard to the merits of such claims with regard to other potential claimants/plaintiffs in a different action.

*Id.* at ¶ 7(c).

### D. Subsequent Court Proceedings

On November 20, 2013, Jenks filed in federal court a "petition to confirm, vacate and/or modify arbitration award."  The case was originally assigned to Judge Yvonne Gonzalez Rogers.  Jenks sought confirmation of the damages award he obtained and rejection of the rulings on which

he did not prevail. Twenty days later, DLA Piper filed a petition in San Francisco Superior Court to confirm the award in its entirety, invoking that court's continuing jurisdiction over the lawsuit Jenks had originally filed.

In the federal case, DLA Piper filed a motion to dismiss: (i) for lack of subject matter jurisdiction; (ii) on the ground that, to the extent Jenks sought a ruling that his claims were not arbitrable, such a ruling would violate the *Rooker-Feldman* doctrine; and (iii) on the ground that the Court should abstain under the *Colorado River* doctrine. Judge Gonzalez Rogers granted the motion on the first ground, explaining there was no subject matter jurisdiction because Jenks had not adequately alleged that the arbitrator manifestly disregarded federal law. Judge Gonzalez Rogers did not express a view on DLA Piper's *Rooker-Feldman* or *Colorado River* arguments, instead giving Jenks leave to amend to allege subject matter jurisdiction. Jenks filed an amended petition to confirm, vacate and/or modify the award, attempting to include allegations that would give rise to subject matter jurisdiction. The case was subsequently reassigned from Judge Gonzalez Rogers to this Court.

In the state case, the Superior Court entered a statement of decision confirming the arbitration award. *See* Docket No. 50. The Superior Court ruled it lacked jurisdiction to vacate the award because Jenks failed to timely respond to DLA Piper's petition to confirm. The Superior Court then went on to address, in the alternative, the one substantive argument Jenks made against confirmation of the award, namely, that DLA Piper was not a party to the arbitration agreement. The Superior Court rejected that argument. As of the date this order is filed, the Superior Court has not yet entered judgment against Jenks.

### III. LEGAL STANDARD

A federal court may not vacate an arbitration award merely because the arbitrator got federal law wrong. Rather, the arbitrator must have manifestly disregarded federal law. "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004) (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). "It must be clear from the record that the arbitrators recognized the applicable law

and then ignored it." *Id*. Put another way, "to demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961) (brackets and internal quotation marks omitted)). Furthermore, "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986)).

At the pleading stage, an allegation that the arbitrator manifestly disregarded federal law is sufficient to confer jurisdiction unless it is patently without merit. *Carter*, 374 F.3d at 838, n.5 ("[E]ven if this argument could be construed as asserting manifest disregard of federal law, it is so patently without merit that it cannot ground federal jurisdiction."); *see also id*. at 836-37.

**IV.     DISCUSSION**

    **A.     Subject Matter Jurisdiction**

The amended petition includes three contentions that the arbitrator manifestly disregarded ERISA law. Those three contentions are:

1. The arbitrator manifestly disregarded ERISA law when she dismissed Jenks' claim that DLA Piper failed to provide plan documents on statute of limitations grounds (the sixth cause of action) because: (i) Jenks repeatedly asked DLA Piper for documents and each failure to respond gave rise to a new claim that restarted the clock; (ii) in any event equitable tolling should apply; and (iii) the arbitrator failed to understand, when she reaffirmed at the end of the proceedings her earlier conclusion that this claim was time barred, that by the end of the proceedings Jenks was asking for documents relating to a different plan (the 2005 UNUM long-term disability plan) from the one that was originally the subject of the sixth cause of action (the Standard Insurance long-term disability plan).

2. The arbitrator manifestly disregarded ERISA law to the extent she rejected his request for a declaration of his rights under the long-term disability plan (which originally, in

9

the seventh cause of action, was a request for his declaration of rights under the Standard Insurance plan but which by the end had become an effort to obtain a ruling about his rights under the 2005 UNUM plan).

3. The arbitrator manifestly disregarded ERISA law by denying Jenks' request that she remove two people – DLA Piper's senior benefits manager and national director of compensation benefits – as plan fiduciaries.

For each of these "manifest disregard" contentions, the amended petition simply alleges that: (i) Jenks submitted statutory and case authority to the arbitrator; (ii) this authority clearly mandated a ruling in Jenks' favor; but (iii) the arbitrator ruled against him.

With respect to his claim that the arbitrator manifestly disregarded the law relating to the disclosure of plan documents, Jenks alleges that he submitted authority for the proposition that each separate request for plan documents gives rise to a distinct claim that restarts the limitations clock, as well as for the proposition that in any event his document-related claims should be equitably tolled. He further alleges that DLA Piper responded by misrepresenting the law. And he alleges that because the arbitrator did not rule for him in the face of the authorities he submitted, this means she manifestly disregarded the law. *See, e.g.*, ¶¶ 69, 71, 74, 76, 77, 78.

With respect to his claim for a declaration of his rights under the long-term disability plan (which started out as a claim based on the Standard Insurance plan but changed into a claim based on the UNUM plan), Jenks again alleges that he submitted authority for the proposition that he must be declared a member of the "non-capital partner class" of that plan, even though he was an associate attorney. He further alleges DLA Piper made misrepresentations to the arbitrator about this issue. And based on his submission of authority to the arbitrator, he alleges that the arbitrator "recognized the well-defined, explicit, and clearly applicable federal laws cited by Jenks, yet disregarded and ignored them in excess of her powers, in denying Jenks' declaratory relief claims based on specious grounds." ¶ 90.

And with respect to his claim for removal of plan fiduciaries, Jenks alleges that the arbitrator requested authority on this issue, Jenks submitted authority, DLA Piper misrepresented the law in response to these submissions, and the arbitrator ruled against him; therefore, the

arbitrator recognized and disregarded clearly established federal law. *See* ¶¶ 94-102.

But to give rise to federal jurisdiction, the arbitrator must actually "recognize" clearly established federal law and then ignore it. The mere submission of authority to an arbitrator (even when the arbitrator requests it, which happens in most if not all arbitrations), cannot possibly give rise to a claim that the arbitrator "recognized" that authority. Otherwise, there would be nothing to distinguish mere error in the adjudication of a federal claim from manifest disregard of federal law during the adjudication of that claim. That is presumably why the Ninth Circuit has described the standard this way: "to demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Collins*, 505 F.3d at 879 (quoting *San Martine Compania De Navegacion, S.A.*, 293 F.2d at 801 (brackets and quotation marks omitted)). And because the petition's allegations of manifest disregard rest solely on the notion that Jenks provided the arbitrator with authority, those allegations are so obviously without merit that they cannot give rise to federal jurisdiction. *Carter*, 374 F.3d at 836-37, 838 n.5. [2]

At the hearing on the motion to dismiss, Jenks relied heavily on *Central Pacific Bank v. Kirkeby*, which he contends stands for the proposition that if a party submits authority to an arbitrator, she is deemed to have "recognized" it. But the court in that case held as follows: "CPB has not met its burden of establishing that it presented the Arbitrator with the well-defined, explicit, and clearly applicable law, that the Arbitrator recognized that law, or that the Arbitrator then intentionally disregarded or ignored that law." 2013 WL 6487468, at *7 (D. Haw. Dec. 9, 2013). This holding reflects an understanding that more is required than the mere submission of authority to the arbitrator. Jenks also emphasized the decision of a Florida district judge in *Francis v. Landstar System Holdings*, which includes language that could be interpreted to stand for the proposition that a federal court has jurisdiction over a petition to vacate an arbitration award if the petition alleges simply that the arbitrator got federal law wrong. 2009 WL 4350250,

---

[2] During the hearing on the motion to dismiss, Jenks' attorney confirmed that the only factual basis for the "manifest disregard" allegations is that Jenks submitted clearly-established authority to the arbitrator and she nonetheless ruled against him.

1  at *5 (M.D. Fla. Nov. 25, 2009). But that would be inconsistent with Ninth Circuit precedent,
2  which makes clear this is not enough.[3]

3  Although it is sufficient to defeat jurisdiction that Jenks' allegations of manifest disregard
4  are patently without merit, it bears noting that there is nothing in the arbitration record Jenks
5  submitted with his petition to suggest that the arbitrator actually recognized clearly established
6  federal law and then refused to follow it. For example, as discussed in the background section
7  above, the arbitrator rejected Jenks' document claim on statute of limitations grounds (the sixth
8  cause of action), but there is no indication she acknowledged the correct rules regarding the statute
9  of limitations and equitable tolling and then refused to apply them. With respect to Jenks' claims
10 regarding the UNUM plan, the arbitrator rejected his request to add an ERISA claim based on that
11 plan (the proposed ninth cause of action) because she concluded he brought it too late and it would
12 prejudice DLA Piper. But she did not indicate she was declining to apply some federal law that
13 would have required a ruling for Jenks on the merits of that claim, much less on the issue of
14 whether he should be allowed to pursue it at the eleventh hour. And in response to Jenks'
15 continued efforts to obtain a declaration of his rights under the UNUM plan, notwithstanding the
16 prior decision not to allow claims based on that plan, the arbitrator rejected his argument but gave
17 no indication she was consciously disregarding some clearly established rule that would have
18 required her to rule for Jenks on his claim that he should, as a former associate attorney, be
19 declared a member of the "non-capital partner class" of attorneys under the UNUM plan. Finally,
20 the arbitrator rejected Jenks' request to remove two DLA Piper employees as plan fiduciaries, but
21 she gave no indication she was recognizing some federal rule that required their removal.

22 To the extent the arbitrator committed errors, in many instances it is likely Jenks invited

---

[3] Jenks also placed emphasis at the hearing on *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), arguing that it creates a basis for federal jurisdiction other than manifest disregard of federal law. But in *Stolt-Nielsen*, the Supreme Court did not address federal jurisdiction. Its holding, vacating the award because the arbitrator exceeded his authority, was a decision on the merits and presumed jurisdiction. The district court had held the arbitrator manifestly disregarded federal law, which would have provided federal jurisdiction. 435 F.Supp.2d 382, 386 (S.D.N.Y. 2006). Thus, *Stolt-Nielsen* does not stand for the proposition that there is an alternative ground for federal subject-matter jurisdiction based on an arbitrator exceeding her authority.

12

them. For example, as discussed above, the arbitrator originally concluded that Jenks' seventh cause of action was preempted by ERISA, even though Jenks had labeled it an ERISA claim based on the Standard long-term disability plan. Jenks may have invited this error (which the arbitrator later addressed in response to a motion for reconsideration) by asserting elsewhere in his first amended complaint that his claims relating to the Standard plan were based on state law. *See* Docket No. 10-10, First Amended Complaint at ¶ 77. Exacerbating the confusion, Jenks later proposed to add an ERISA claim (the tenth cause of action) based on the short-term disability plan, even though Jenks had asserted throughout the arbitration (and indeed, in his original state court lawsuit) that state law governed these claims. *See* Docket No. 10-19, Addendum to First Amended Complaint. What's more, during the arbitration proceedings Jenks made reference to his theory that his ERISA claims might not be subject to arbitration, yet he submitted those claims to the arbitrator, asked her to rule on them, and never asked her to rule that they were not arbitrable (even though he now makes that argument in federal court). *See* Docket No. 10-9, First Amended Complaint at 1; Docket No. 11-5, Jenks' Closing Brief on the Merits at 23-31, 38-39.

In yet another example, Jenks argues now that when the arbitrator rejected his fiduciary duty claims, she did so based on a misimpression that bad faith is required to make out such a claim against an ERISA fiduciary. Putting aside that the record evinces no "recognition" of clearly established law to the contrary by the arbitrator, Jenks himself placed great emphasis on bad faith in his post-hearing brief. *See* Docket No. 11-5, Jenks' Closing Brief on the Merits at 27-31. Finally, Jenks contends the arbitrator gave insufficient attention at the end of the proceedings to his request for a declaration of his rights under the 2005 UNUM long term disability plan, but in his lengthy and scattershot post-hearing brief, Jenks made only the most fleeting of references to this issue. *See id.* at 38-39. Given how these proceedings went, even if Jenks were correct that an arbitrator should be deemed to have "recognized" clearly established federal law when that law is spoon-fed to her by a litigant, nothing close to that happened here.[4]

---

[4] Jenks asserts other bases for federal jurisdiction, but they are frivolous and require no discussion. For example, Jenks argues that federal courts can review arbitral rulings on ERISA claims for "clear error," that the ERISA claims were not subject to arbitration in the first place, and that federal jurisdiction lies because the arbitrator failed to give full relief.

### B. Colorado River Abstention

Even if the Court could exercise jurisdiction over this petition, it would decline to do so -- and would dismiss the petition -- under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). This is primarily a state law dispute, and for that reason Jenks originally chose to sue DLA Piper in state court. With that choice came California Code of Civil Procedure Section 1292.6, which provides that when the Superior Court compels arbitration, it retains jurisdiction for the purpose of entertaining subsequent petitions to confirm or vacate the award. Consistent with that provision, the Superior Court has now issued a decision confirming the award. Although Jenks filed his post-arbitration petition in federal court before DLA Piper filed its post-arbitration petition in state court, this does not change the fact that Jenks put this dispute under the jurisdiction of the state court system at the outset, and then did not timely respond when DLA Piper invoked that court's continuing jurisdiction. It might be a different matter if Jenks had originally sued in federal court (invoking federal question jurisdiction based on ERISA claims) and then DLA Piper rushed to state court post-arbitration to confirm the award. But it would be unseemly under these circumstances for a federal court to jump into this litigation. *See, e.g., Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340-343 (4th Cir. 2002); *Hinman v. Fujitsu Software Corp.*, 2006 WL 358073, at *2-3 (N.D. Cal. Feb. 13, 2006); *NitGen Co. v. SecuGen Corp.*, 2004 WL 2303929, at *4-6 (N.D. Cal. Oct. 12, 2004).

### V. CONCLUSION

Jenks' amended petition to confirm, vacate, and/or modify the arbitration award is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 10, 2014

_____
VINCE CHHABRIA
United States District Judge

14